Lewis J. McDERMOTT, III, Plaintiff,

v.

OMID INTERNATIONAL INC., et al., Defendants.

Lewis J. McDERMOTT, III, Plaintiff,

v.

STABITEX VERTRIEBSGESELLSCHAFT, MBH, Defendants.

Nos. C–2–84–1688, C–2–86–119.

United States District Court, S.D. Ohio, E.D.

Feb. 2, 1988.

**1222**

Frank T. Kremblas, Columbus, Ohio, for plaintiff.

Thomas L. Long, Baker & Hostetler, and William W. Milligan, Emens, Hurd, Kegler & Ritter, Columbus, Ohio, for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GRAHAM, District Judge.

### FINDINGS OF FACT

1. On May 24, 1976, Robert C. Ward filed an application for a United States patent. The invention described in the application is a binder material consisting of a grid-like frame coated with pressure sensitive adhesive. The binder is intended to be used for the purpose of fastening carpeting to a surface, such as a floor, in such a way that it can be easily removed without damage to carpeting or floor. A patent [No. 4,234,649] was issued to Ward on November 18, 1980 and subsequently assigned to the plaintiff, Lewis J. McDermott, III.

2. A product made in accordance with the Ward patent has been sold for a number of years under the tradename "Lok-Lift." This product consists of a knitted fabric material or "scrim" which is coated with a pressure sensitive adhesive. There are open spaces between the fabric strands, thus the binder is permeable, and the adhesive effect is limited to the area of the fabric strands. This arrangement leads to advantageous qualities which are not found in other methods of fastening carpet to a floor.

3. Prior to the Ward patent, the two principal methods for adhering carpeting to a floor were the adhesive or "glue-down" method in which the carpet is permanently glued to the floor and the so-called "tackless" installation in which the carpet is stretched over tacks which protrude upwardly through wood strips which are either glued or nailed to the perimeter of the floor. Both of these methods have the disadvantage of difficult access to subfloor systems such as wiring for telephones, computers and electrical service and difficulty of removal without significant damage to the carpet and the floor. The Ward patent permits the secure fastening of a carpet to a floor in such a way that it can be easily removed and replaced without damage to either the carpet or the floor. Furthermore, since the surface of the binder material is a grid with open spaces, heat can readily pass through it and moisture can evaporate.

4. The Ward patent carpet binder is manufactured with a thin, removable protective liner on each side. At the installation site, the binder is cut to size, the bottom protective film is removed and the binder is unrolled over the floor. The carpeting is then unrolled over the binder and is cut to size and thereafter folded back to expose the binder. The top protective film is then removed and the carpeting is unfolded over the exposed binder. The pressure sensitive adhesive which coats the strands of the binder fibers effectively adheres the carpet to the floor, but in such a way that it can later be stripped with little or no adhesive residue and no significant damage to either carpet or floor.

5. Stabitex Vertriebsgesellschaft MBH (hereinafter "Stabitex") is a West German corporation which manufactures a product like LokLift. The West German product is known as "Stabitex" and it has been sold in the United States by Omid International, Inc., an Ohio corporation, doing business in Columbus, Ohio under the name Oriental Rug Supply House. McDermott brought action against Omid and Oriental for patent infringement in Case No. C–2–84–1688 and McDermott likewise sued Stabitex for patent infringement in Case No. C–2–86–119. These cases were consolidated for trial pursuant to Rule 42(a) Fed.R.Civ.P. and pro-

ceeded to trial to the court on the issues of patent validity and infringement on the 2nd day of November, 1987.

6. Claim No. 2 of the Ward patent, the only independent claim asserted, describes a binder material comprising a grid-like frame construction for strippably binding a covering material to a rigid holding surface. The binder material has two outer surfaces, the grid-like frame elements are coated with pressure sensitive adhesive present only on the frame elements, and the adhesive has the property of being strippable from the holding surface and the covering material.

VALIDITY—ANTICIPATION

■ 7. Defendants claim that the Ward patent is invalid pursuant to 35 U.S.C. § 102(b) on the grounds that it was anticipated by West German patent No. G7,143,-818, Gehlen (the "Gehlen patent"), dated June 8, 1972. The Gehlen patent describes a binder consisting of a solid strip of double-sided adhesive tape in which the adhesive force of the tape is reduced by mechanically placing circular pieces of paper or film in a checkerboard-like pattern on one or both sides of the tape. Unlike Ward in which the binder is a grid, the elements of which are coated with adhesive, in Gehlen the binder is a tape, each side of which is coated with adhesive. In Ward, the amount of adhesive presented on the surface of the product is limited by the fact that the binder material itself is a frame or grid having many open spaces.

8. The elements of Claim One of the Ward patent which are not found in Gehlen include the following:

a) Binder material comprising a grid-like frame construction;

b) Binder material comprising a plurality of spaced frame elements intersecting each other to form a grid-like frame construction, said frame elements being coated with pressure sensitive adhesive;

c) Said adhesive coating being present only on said frame elements.

The binder material in Gehlen is not a grid-like frame, but is instead a solid piece of double sided adhesive tape, both sides of which (but not the thickness) are coated with adhesive. The Gehlen binder is not permeable.

9. Gehlen discloses a method for reducing the aggressiveness of an existing binder material, to wit: double sided adhesive tape, whereas Ward discloses a completely new kind of binder construction in which pressure sensitive adhesive is applied to all surfaces of a grid-like frame. Gehlen does not anticipate Ward. The disclosure in Gehlen is not substantially identical to the claimed invention of Ward.

VALIDITY—OBVIOUSNESS

■ 10. Defendants claim in the alternative that the Ward patent is invalid pursuant to 35 U.S.C. § 103 on the grounds that the invention would have been obvious to a person having ordinary skill in the art. In support of this defense, defendants rely upon several domestic and foreign patents. Each of these will be discussed in the following paragraphs.

11. United States Patent No. 4,075,377 "Aitchison" was considered by the patent examiner who issued the Ward patent. Aitchison discloses a loose mesh which is placed over a floor before a permanent adhesive is spread over the floor and the mesh. A carpet is then placed over the adhesive layer permanently gluing the back of the carpet to the mesh and the floor. The mesh acts as a barrier between the adhesive and the floor, whereas in Ward the adhesive and the mesh together form the binder. Aitchison is a variation of the standard adhesive method of carpet installation. Its fabric mesh does not act as a binder but as a method for limiting the amount of glue in contact with the floor. Unlike Ward, the adhesive does not coat the mesh, in fact such would defeat the purpose of the disclosure made in Aitchison. Unlike Ward, Aitchison contemplates the application of a permanent adhesive to the floor, a major disadvantage eliminated by Ward. Aitchison cannot be used to secure an oriental carpet or area rug to wall to wall carpeting, one of the advantageous uses of Ward. Aitchison does not claim the ability of repeated removal of the carpeting

from the floor or reuseability of the carpeting.

12. United States Patent No. 3,410,747 "Orr." Orr was before the patent examiner who issued the Ward patent. Orr discloses a method of forming a carpet by flocking fibers onto an adhesive coated grid. Orr shows a method of producing a carpet, it does not disclose a method of binding a carpet to a floor.

13. British Patent No. 1,007,281 "Sleep." The evidence did not reveal whether this or any of the other foreign patents relied on by the defendants were before the patent examiner. Sleep discloses a method for producing a template or pattern to be used in cutting a carpet to the proper dimensions before installation. The invention consists of a sheet of paper coated with areas of pressure sensitive adhesive. The paper is laid on the floor and cut along the edge between the wall and the floor. The carpet is then placed over the paper and when it is lifted, the paper adheres to the back of the carpet. The carpet is then cut along the edge of the paper. The paper is removed and the properly dimensioned carpet is laid back on the floor. The paper is then discarded. The invention in Sleep is a pattern not a binder. Sleep does not suggest that the product could be used as a binder. In Sleep, the adhesive is applied to a solid paper product, not to a grid-like construction. Sleep does not purport to solve any problems encountered in binding a carpet to a floor.

14. British Patent No. 1,239,430 "Breveteam." Breveteam discloses a product in which a carpet is produced with low strength adhesive applied to its underside which has the quality of becoming a high strength permanent adhesive upon application of heat and pressure. The adhesive is applied to the back of the carpet in a geometric pattern and does not cover the entire surface. This patent contemplates a permanent installation with all of the removal problems of the standard glue-down method. It does not contemplate a separate binder material coated with strippable adhesive as in Ward. The sole advantage of the Breveteam patent product is the elimination of the necessity of applying the permanent adhesive to the floor prior to laying the carpet.

15. German Patent No. UM,71,24,118 "Langerfeld." Langerfeld discloses a construction in which a non-strippable adhesive is applied to both sides of a foam rubber carpet pad, with a protective film applied to each side. The film is removed at the time of installation and the exposed adhesive permanently bonds the pad to both the carpet and the floor. Langerfeld discloses a combination of carpet pad and adhesive. It does not disclose a method of strippably binding carpet to floor. It is not permeable, nor is it removable without damaging carpeting or floor. It cannot be used to bind an area rug to a carpet or a floor.

16. German patent No. UM,71,43,828 "Gehlen." As noted above, Gehlen does disclose a method for securing carpeting to a floor. However, the concept of Gehlen is to take an existing material, double sided adhesive tape, and moderate its sticking power by covering part of the adhesive area with paper or film. In Gehlen, the binder consists of a strip of adhesive tape which is solid and air tight, unlike the grid-like structure of the adhesive coated strands in Ward. The structure and concept of Gehlen is unlike the structure and concept of Ward.

17. The art in this case consists of various methods of fastening carpet to a floor. At the time of Ward's invention, the level of ordinary skill in the art consisted of the tackless method described above and a number of variations in the use of glues, adhesives and adhesive coated materials. The level of ordinary skill in the use of adhesives and adhesive material included efforts to moderate the aggressiveness of adhesives by placing a fabric mesh on the floor before applying a permanent adhesive as in Aitchison, or by applying adhesive to only part of a carpet backing as in Breveteam. Double sided adhesive tape had been used to adhere carpet to a floor but was unsatisfactory and Gehlen demonstrates that an effort had been made to render double sided adhesive tape more

advantageous by reducing its aggressiveness by blocking out part of the adhesive surface.

18. There was no evidence that a product like that described in the Ward patent was ever used in the trade before Ward invented it. At the time the Ward invention was made, no known device fulfilled the need for a strippable binder for securing carpeting to a floor which resulted in a permanent installation but which nevertheless permitted the removal of the carpeting without damage to it or the floor. Ward's invention, unlike any of the inventions relied upon by the defendants, satisfied the need for an easily strippable means of securing a carpet to a surface. Prior to Ward's invention, no one had used a pressure sensitive adhesive coated grid-like material to secure carpet to a surface.

19. The Ward invention has achieved commercial success on its merits. It fulfilled a long-felt need in the carpet industry. Various unsuccessful efforts had been made to solve the problems which it solves. Before Ward, there was nothing on the market which effectively solved the problems inherent in the existing methods of fastening carpeting to a floor. The ease and reduced time and cost of removing carpeting from a floor without damage to either caused the commercial success of the Ward patent product.

20. The concept of coating a fabric scrim with pressure sensitive adhesive was not obvious to one possessing the level of ordinary skill in the art, it was not obvious from the prior art, and it was not obvious from any of the patents cited by the defendants, either alone or in combination. None of those inventions, themselves or when viewed together suggested the desirability of making the combination disclosed in Ward. There is no evidence that prior to Ward anyone skilled in the art ever contemplated coating a grid-like structure with pressure sensitive adhesive to produce a product which could be used to secure carpet to a floor or other surface, indeed there was no evidence that prior to Ward anyone had conceived of coating fabric with pressure sensitive adhesive for the purpose of producing a strippable binding material for any application.

INFRINGEMENT

█ 21. The defendants concede that with one exception the Stabitex product which they manufacture and sell, has all of the elements of the Ward patent. Defendants claim that this exception defeats plaintiff's claim of infringement. According to the defendants, the missing element is the claim in Ward that the adhesive coating is present only on the frame elements of the grid-like construction of the binder material. Defendants claim that in the Stabitex product the adhesive coating is present not only on the frame elements but also in the interstitial spaces between those frame elements. Defendants further assert that the doctrine of prosecution history or file wrapper estoppel estopps plaintiff from claiming that this difference does not effectively differentiate the Stabitex product from the Ward patent.

22. The fabric mesh used in the manufacture of the Stabitex product consists of parallel strands of fabric bridged by a series of smaller strands, arranged in an X-shaped pattern forming small triangles at the top and bottom and larger hexagonal shapes on each side. The entire fabric mesh is coated with a pressure sensitive adhesive. Most of the hexagonal spaces are clear of adhesive but in the majority of the small triangular spaces some adhesive adheres bridging the gap in whole or in part with a film of adhesive. It is this residual film that defendants rely upon to distinguish the Stabitex product from the Ward patent.

23. The residual film of adhesive in the small triangular shaped spaces formed by the fabric mesh in the Stabitex product performs no useful function. It does not add to the holding power or adhesive quality of the binder material or serve any purpose whatsoever in the functioning of the product. It is operatively non-existent. Advertising brochures issued by the defendant picture the product free of this adhesive film. The Court concludes that the presence of this adhesive film is a mere accident of the manufacturing process and

is an unintended consequence of the material selected or the manufacturing process employed and is more accurately viewed as a product defect as opposed to a functional attribute of the product. Since one of the benefits of the product is strippability with lack of residue, the presence of this nonfunctional film in the interstices of the fabric binder increases the likelihood that it will leave a residue of adhesive upon removal; therefore, it must be viewed as a defect or at least an undesirable attribute of the product as manufactured by Stabitex. The area covered by this adhesive film constitutes only three to four percent of the total open areas and upon microscopic examination even these areas are shown to be permeated with a myriad of small bubbles and holes. Testing of the "peel strength" of the Stabitex product with and without this thin film revealed no difference in the holding power of the product.

24. In the Stabitex product the adhesive coating is substantially present only on the frame elements of the grid-like frame construction; the interstitial spaces between the grid-like frame elements are substantially devoid of adhesive and the small amount of adhesive film which is present in the interstitial spaces serves no function in the intended operation of the product.

25. The Stabitex product is the equivalent of and interchangeable with the invention disclosed in the Ward patent. The Stabitex product performs the same function, in the same manner to obtain the same result as the invention disclosed in the Ward patent and is the full equivalent of the invention disclosed in the Ward patent.

26. The Stabitex product with a thin porous film of nonfunctional adhesive in less than three percent of the total interstitial spaces of the fiber grid, being entirely nonfunctional and an apparent unintended result of the manufacturing process, is the literal equivalent of the limitation of Claim One of the Ward patent wherein adhesive is limited to the fibers. The Stabitex product has all of the elements of the claims of the Ward patent. The claims of the Ward patent are readable on the Stabitex product.

27. The prosecution history of the Ward patent reveals that Claim One of the patent was amended to limit the pressure sensitive adhesive to the frame elements in order to overcome the patent examiner's objections based upon the Aitchison patent. However, as noted above, this Court finds that Aitchison disclosed an invention which is substantially different from the Ward invention.

CONCLUSION OF LAW

1. 35 U.S.C. § 282 provides in part:

A patent shall be presumed valid.... The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.

2. A patent is presumed valid; 35 U.S.C. § 282 places the burden of proving facts establishing invalidity on the person asserting invalidity. The challenger must establish those facts by clear and convincing evidence and the ultimate burden of persuasion never shifts from the patent challenger. *Jones v. Hardy,* 727 F.2d 1524 (Fed.Cir.1984); *Medtronic, Inc. v. Cardiac Pacemakers, Inc.,* 721 F.2d 1563 (Fed.Cir. 1983).

3. 35 U.S.C. § 102 provides in part as follows:

A person shall be entitled to a patent unless ...

(b) The invention was patented or described in a printed publication in this or a foreign country ... more than one year prior to the date of the application for a patent in the United States.

4. The test for anticipation under 35 U.S.C. § 102 is whether the claim attacked reads on a product disclosed in the prior art. *Structural Products Co. v. Park Rubber Co.,* 749 F.2d 707 (Fed.Cir. 1984). Anticipation can only be established by a single prior art reference which discloses each and every element of the claimed invention. *Id.; Kalman v. Kimberly Clarke,* 713 F.2d 760 (Fed.Cir.1983). None of the patents relied upon by the defendants anticipate the Ward invention since numerous elements recited in the

claims of the Ward patent are not present in those prior patents.

5. 35 U.S.C. § 103 provides in part as follows:

A patent may not be obtained though the invention is not identically disclosed or described as set forth in § 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

6. The obviousness or nonobviousness of the subject matter of a patent is to be determined against the background of the scope and content of the prior art; differences between the prior art and the claims at issue; and the level of ordinary skill in the pertinent art. Secondary considerations such as commercial success, long felt but unsolved needs, failure of others, etc. may be utilized to give light to the circumstances surrounding the origin of the subject matter and may have relevancy as indicia of obviousness or nonobviousness. *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).

7. Commercial success alone is insufficient to establish nonobviousness; however, it is a secondary consideration in determining the validity of the patent in question. *Moore v. Wesbar Corp.*, 701 F.2d 1247, 1253 (7th Cir.1983).

8. In making the determination of obviousness or nonobviousness, the claimed invention must be considered as a whole; the references must be considered as a whole and without the benefit of hindsight and the presumption of validity remains constant and intact throughout the case. *Hodosh v. Block Drug Co., Inc.*, 786 F.2d 1136, 1143 n. 5 (Fed.Cir.1986). "Ought to be tried" is not the standard with which obviousness is determined. In order to prevail under a claim of obviousness, the challenger must show that the claimed subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art.

9. 35 U.S.C. § 271 provides in part as follows:

(a) Except as otherwise provided in this title, whoever without authority makes, uses or sells any patented invention, within the United States during the term of the patent therefor, infringes the patent.

(b) Whoever actively induces infringement of a patent shall be liable as an infringer.

10. All the elements of the claims in the Ward patent are readable on the Stabitex product and it infringes the Ward patent claims. *Builders Concrete, Inc. v. Bremerton Concrete Products Company*, 757 F.2d 255 (Fed.Cir.1985). Defendants are infringers of the Ward patent within the meaning of 35 U.S.C. § 271.

11. The addition of a nonfunctional element to an infringing product does not absolve that product from infringement. *Eureka Tool Co. v. Wire Rope Appliance Co.*, 265 F. 673 (8th Cir.1920); *Hansen v. Siebring*, 231 F.Supp. 634, 142 U.S.P.Q. 465 (N.D.Iowa 1964); *Botsolas v. Schultz Laboratories*, 351 F.Supp. 188 (C.D.Cal.1972); *Schlegel Mfg. Co. v. King Aluminum Corp.*, 381 F.Supp. 649 (S.D.Ohio 1974).

12. Infringement may be found under the doctrine of equivalents if an accused device performs substantially the same overall function or work in substantially the same way, to obtain substantially the same overall result as the claimed invention. *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950).

13. The Stabitex product is the equivalent of the plaintiff's product. It performs substantially the same function as the product disclosed by the Ward patent in substantially the same manner to obtain substantially the same result. Hence, it is the full equivalent of the structure claimed in the Ward patent and is an infringement thereof. *Perkin–Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 221 U.S.P.Q. 669 (Fed.Cir.1984); *E.I. du Pont de Nemours & Co. v. Atlas Powder Co.*, 24 F.Supp. 263 (D.C.Del.1938).

14. The Stabitex product infringes the Ward patent under the doctrine of equivalents when viewed either under an element by element comparison or when viewed in light of the entirety of the Stabitex product and the entirety of the Ward patent. See: *Pennwalt Corporation v. Durand Wayland, Inc.*, 833 F.2d 931, 4 U.S.P.Q.2d 1737 (Fed.Cir.1987).

■ 15. Prosecution history estoppel or file wrapper estoppel arises when an applicant for a patent adds a limitation to a claim in order to avoid an earlier prior patent and thereafter attempts to ignore the limitation in order to broaden the scope of his claim. However, the doctrine does not apply if the structure of the prior patent which prompted the limitation is totally different from the structure of the allegedly infringing product. *Drum v. Turner*, 219 F. 188 (8th Cir.1914); *Wayne Mfg. v. Benbow–Brammer Mfg. Co.*, 168 F. 271 (8th Cir.1909).

### CONCLUSION

The Ward patent is valid. The defendants have failed to sustain their burden of proving their defenses of invalidity on the basis of either anticipation or obviousness. The Stabitex product is a literal infringement of the Ward patent. Even if it is not viewed as a literal infringement, it would be an infringement under the doctrine of equivalents and the application of that doctrine is not precluded by file wrapper estoppel.

The defendants are joint infringers of the Ward patent.

This matter is set for trial on the issue of damages on April 13, 1988. The final pretrial conference will be held on March 25, 1988 at 9:30 a.m.

It is so ORDERED.