**David OWEN, Plaintiff-Appellee,**

v.

**KERR–McGEE CORPORATION and the Home Indemnity Company, Defendants-Appellants.**

No. 82–3373
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Feb. 18, 1983.

Hayes, Harkey, Smith & Cascio, Charles Sterling Smith, Monroe, La., for defendants-appellants.

Davenport, Files & Kelly, William G. Kelly, Jr., Monroe, La., R.H. Madden, III, Ruston, La., for plaintiff-appellee.

Before CLARK, Chief Judge, POLITZ and HIGGINBOTHAM, Circuit Judges.

CLARK, Chief Judge:

David Owen brought this diversity action against Kerr-McGee Corporation and its insurer, The Home Indemnity Company, alleging that Kerr-McGee negligently installed and operated an underground gas pipeline. The jury returned a verdict in favor of Owen and awarded him $150,000 in damages. Kerr-McGee moved for a judgment notwithstanding the verdict, and in the alternative, for a new trial. The court denied the motions and entered judgment in favor of Owen. Kerr-McGee argues that the jury's verdict was clearly erroneous, that the district court erred in refusing to grant Kerr-McGee's post-trial motions, and that the court erred in excluding an expert witness' opinion as to the cause of the accident. We reject these arguments and affirm the judgment of the district court.

David Owen was the owner-operator of a bulldozer. In 1973, he cleared a forty-acre tract of woodland owned by James and Elton Frazier. He left fallen trees, stumps, and brush behind. In 1975–76, Kerr-McGee contracted with an independent contractor to install a gas pipeline across the Frazier property. The contract required the contractor to bury the pipe at least thirty-six inches below the surface. Kerr-McGee obtained a right-of-way from the Fraziers to lay the pipeline across their property. The right-of-way agreement provided that the line would be buried so as not to interfere with cultivation. No precise depth was specified.

In 1978, the Fraziers hired Owen to complete the job of clearing their forty-acre tract. He was to dispose of all remaining stumps, logs, and debris. The Fraziers did not inform Owen of the new pipeline. The only visible indication that a pipeline crossed the property was two signs placed by Kerr-McGee on either side of the public road adjoining the tract. Kerr-McGee's telephone number was printed on the signs.

Owen saw the signs, but assumed that they formed two points on a straight pipeline which proceeded directly across the property. Because he did not intend to dig near that straight line, he began digging

without further investigation. In fact, the pipeline made a sharp bend after crossing underneath the road, and proceeded toward the area in which Owen intended to dig. While engaged in clearing the tract, the blade of Owen's bulldozer ran into Kerr-McGee's pipeline. An explosion ensued, and Owen was severely injured.

Owen filed suit in Louisiana state court alleging that Kerr-McGee was negligent in installing and operating the pipeline. Kerr-McGee and Home Indemnity Company[1] removed the action to the federal district court based on the complete diversity of citizenship between the parties. Owen developed three theories of liability. First, he alleged that Kerr-McGee was negligent in failing to adequately mark the path of the underground pipeline. Second, he alleged that the pipeline was not buried deep enough. And third, he alleged that Kerr-McGee had notice that he was digging in the area of the pipeline, and therefore had an affirmative duty to warn him of its presence. Kerr-McGee's primary defense was that Owen was contributorily negligent in digging in the field without ascertaining the exact location of the pipeline. The jury concluded that Kerr-McGee was negligent, and that its negligence was the legal cause of the accident. It refused to find that Owen was contributorily negligent.

■ Kerr-McGee argues that the jury's findings are clearly erroneous. It also argues that the district court erred in denying its motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. The verdict of a properly instructed jury cannot be disturbed if it is supported by substantial evidence. *Slavin v. Curry,* 690 F.2d 446, 449 (5th Cir.1982); *Laje v. R.E. Thomason General Hospital,* 665 F.2d 724, 725, 728–29 (5th Cir.1982); *Petrites v. J.C. Bradford & Co.,* 646 F.2d 1033, 1035 (5th Cir.1981). The standard of review of the denial of a judgment notwithstanding the verdict is similar. This court must

consider all of the evidence—not just that evidence which supports the nonmover's case—but in a light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motion is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n.o.v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences and determine the credibility of witnesses.

*Boeing Co. v. Shipman,* 411 F.2d 365, 374–75 (5th Cir.1969) (en banc). *See Reeves v. General Foods Corp.,* 682 F.2d 515, 519 (5th Cir.1982); *Haught v. Maceluch,* 681 F.2d 291, 302 (5th Cir.1982).

■ A trial court may grant a new trial if the verdict is against the clear weight of the evidence. *Reeves, supra* at 519 n. 6; *Conway v. Chemical Leaman Tank Lines, Inc.,* 610 F.2d 360, 363 (5th Cir.1980). But if the trial court denies the motion for a new trial, this court may not disturb that decision unless there was a clear abuse of discretion. *International City Bank v. Morgan Walton Properties,* 675 F.2d 666, 669 (5th Cir.1982); *Bunch v. Walter,* 673 F.2d 127, 130 n. 4 (5th Cir.1982); *Shows v. Jami-*

1. Because of the identity of interest between Kerr-McGee Corporation and The Home Indemnity Company, the two defendants will hereinafter be referred to simply as "Kerr-McGee."

*son Bedding, Inc.,* 671 F.2d 927, 930 (5th Cir.1982).

▉ Under Louisiana law, the owner and operator of a facility must exercise reasonable care for the safety of persons on or around his property. *Walker v. Union Oil Mill, Inc.,* 369 So.2d 1043, 1047 (La.1979); *Dyson v. Gulf Modular Corp.,* 338 So.2d 1385, 1390–91 (La.1976); *Williams v. City of Alexandria,* 376 So.2d 367, 370 (La.App. 1979). In determining a particular defendants' duty, consideration should be given to the nature of the facility and the dangers presented by it. *Walker, supra* at 1047; *Shelton v. Aetna Casualty & Surety Co.,* 334 So.2d 406, 410 (La.1976). Whether or not the defendant conformed to the standard of care that would be exercised by a reasonable person in his position is a factual question. *Lacombe v. Greathouse,* 407 So.2d 1346, 1349 (La.App.1981).

▉ There is ample evidence in the record from which the jury could have concluded that Kerr-McGee was negligent. There was evidence to indicate that industry standards and general due care required that Kerr-McGee more adequately mark its lines. Experts testified that operators of pipelines often marked the line's location by signs on fences and creek crossings. Kerr-McGee only marked its lines at road crossings. The jury could have found that the location of the signs, absent any indication that there was a sharp bend in the line, could actually mislead a reasonable person as to the location of the line.

There was also evidence to support a finding that a reasonable operator would have buried the pipeline deeper. Kerr-McGee's own contract required the pipeline to be buried at least thirty-six inches underground. Several witnesses testified that the pipeline was only eighteen inches beneath the surface. Finally, there was evidence that Kerr-McGee had notice that Owen was working in the vicinity of their line, and yet unreasonably failed to warn him of the danger.

Kerr-McGee argued at trial that Owen was contributorily negligent in failing to fully investigate the exact location of the line. Owen assumed from the location of the roadside signs in relation to each other and in relation to the area where he would be digging that he would not come in contact with the line. There is sufficient evidence to support the jury's finding that this assumption was a reasonable one. For example, experts testified that they would have made the same assumption.

Kerr-McGee also challenges an evidentiary ruling of the trial court. After presenting Jack Stone as a witness and qualifying him as an expert in the installation and maintenance of gas gathering systems, Kerr-McGee's attorney asked him the following question:

> Now, Mr. Stone, you have been qualified as an expert in petroleum engineering and operation, installation and maintenance of gas gathering systems. Now, after hearing all of the evidence, looking at all of the exhibits, hearing in particular all of the witnesses, primarily plaintiff's witnesses, do you have any opinion as to the cause of the accident of July 8th, 1978?

Counsel for Owen immediately objected. The trial court sustained the objection because the question went to the ultimate issue in the case. The court commented to the jury:

> A witness, under the rules, may make comment and issue an opinion on an ultimate issue. The court has made a distinction, as far as the rules of evidence is concerned. The court has made a distinction between an ultimate issue and the ultimate issue. The court feels that when you get to the ultimate issue you are treading on the area reserved for the jury, and that is why I have sustained the objection, even though there is some ground for admission.

Although the court's language is somewhat indirect, its ruling is correct.

▉ Fed.R.Evid. 704 abolishes the per se rule against testimony regarding ultimate issues of fact. *United States v. Grote,* 632 F.2d 387, 390 (5th Cir.1980), *cert. denied,* 454 U.S. 819, 102 S.Ct. 98, 70 L.Ed.2d 88

(1981); *United States v. Miller,* 600 F.2d 498, 500 (5th Cir.), *cert. denied,* 444 U.S. 955, 100 S.Ct. 434, 62 L.Ed.2d 327 (1979). The rule provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." The rule was enacted to change the old view that the giving an opinion on an ultimate issue would "usurp the function" or "invade the province" of the jury. As the notes to Rule 704 point out, the traditional view was unduly restrictive, difficult of application, and generally served only to deprive the trier of fact of useful information.

Rule 704, however, does not open the door to all opinions. The Advisory Committee notes make it clear that questions which would merely allow the witness to tell the jury what result to reach are not permitted. Nor is the rule intended to allow a witness to give *legal* conclusions. *United States v. Fogg,* 652 F.2d 551, 557 (5th Cir.1981); *cert. denied,* 456 U.S. 905, 102 S.Ct. 1751, 72 L.Ed.2d 162 (1982); *United States v. Milton,* 555 F.2d 1198, 1203 (5th Cir.1977). *See* McCormick, Evidence § 12 (1972). The task of separating impermissible questions which call for overbroad or legal responses from permissible questions is not a facile one. The example given in the Advisory Committee Notes to Rule 704 is helpful. The question "Did T have capacity to make a will?" should be excluded. The question "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" is permissible. The first question is phrased in such broad terms that it could as readily elicit a legal as well as a fact based response. A direct response, whether it be negative or affirmative, would supply the jury with no information other than the expert's view of how its verdict should read. Moreover, allowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant.

The question posed by Kerr-McGee's attorney is more akin to the first, improper question than the second, permissible one. The court was well justified in concluding that the attorney's question sought from the witness his opinion as to the *legal,* not a factual, "cause of the accident." This is so because there was no dispute in the evidence as to the factual cause of the mishap: Owen ran into the pipeline with his bulldozer. Thus, this makes it obvious that the attorney was asking the witness to opine that Owen was contributorily negligent. Whether or not Owen's acts were the "cause of the accident" is the issue the jury must resolve after appropriate legal instructions by the court.

That the attorney was seeking a legal conclusion is also made clear by the question he asked after the court's ruling:

Mr. Stone, the past two days we have heard any number of witnesses who profess to be experts in the field of dirt contracting or land clearing, and I believe, if I recall correctly, and I think I do, their testimony was to the effect that they would notice a road crossing and then look for some signal, a turn indicator, a post or a painted fence, whereby they make a determination as to whether or not they are going to be working close to a pipeline, and they would go on and do their work. Do you consider that, with your expertise, safe practice?

This question, directly addressed to whether Owen was following proper practices, seeks a factual, not a legal, conclusion. Owen's counsel objected to the question. The court correctly overruled that objection. If there was error in the ruling earlier, it was quickly rendered harmless.

We conclude that sufficient evidence supports the jury's verdict and the rulings of the trial court on Kerr-McGee's post-trial motions. Kerr-McGee's attack on the court's evidentiary ruling is without merit. The judgment of the district court is

AFFIRMED.