Clarence F. DAVIS, Plaintiff-Appellee,

v.

COMBUSTION ENGINEERING, INC., Defendant-Appellant.

No. 82–5471.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 24, 1983.

Decided Aug. 16, 1984.

Wellford, Circuit Judge, concurred in part and dissented in part and filed opinion.

James C. Lee, Lee & Hanzelik, Chattanooga, Tenn., James M. Paulson (argued), Boston, Mass., for defendant-appellant.

Harry F. Burnette (argued), Brown, Dobson & Burnette, Chattanooga, Tenn., for plaintiff-appellee.

Before JONES and WELLFORD, Circuit Judges; and RUBIN, District Judge *

CARL B. RUBIN, District Judge.

Appellant Combustion Engineering, Inc. ("Combustion"), appeals the denial of its motion for a new trial following a jury trial in the United States District Court for the Eastern District of Tennessee. The jury returned a verdict on special issues, finding appellant liable for a willful violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, and awarding appellee Clarence F. Davis $22,200 in back pay and $88,800 in compensation for future losses or "front pay." In addition, the district court awarded appellee $20,000 in liquidated damages and $40,-813.90 in attorney's fees, for a total award of $171,813.90.

Five issues are raised on appeal: (1) whether the trial court erred in permitting the expert testimony of appellee's witness, Professor Thomas E. Geraghty; (2) wheth-er the trial court erred in instructing the jury that appellant was required to meet a prima facie showing of age discrimination by introducing "credible" evidence to the contrary; (3) whether the trial court properly defined a "willful" violation of the ADEA in its instructions to the jury; (4) whether the trial court properly awarded appellee compensation for future losses ("front pay"); and (5) whether the trial court's award of attorney's fees was proper. Each of these issues was raised in appellant's motion for a new trial, which the trial court denied. We will consider these issues in the order raised.

## I.

Appellant's first contention is that the trial court erred in qualifying Professor Thomas E. Geraghty as an expert witness and in permitting him "to testify to the ultimate legal conclusion in the case— whether age discrimination had occurred." Appellant's Brief at 5. Appellant argues that Professor Geraghty was unqualified to testify as an expert in the area of age discrimination and that testimony as to his conclusions "usurped the function of the court and unfairly and irreparably influenced the jury's decision." *Id.*[1]

Professor Geraghty's qualifications were brought out at trial. His undergraduate degree was in business administration. He also had an advanced degree in that subject, with concentration in the areas of industrial management and industrial relations.

His employment history included work as a chief industrial engineer and consulting

---

* Honorable Carl B. Rubin, Chief Judge, United States District Court for the Southern District of Ohio, sitting by designation.

1. Appellant bases his objection to the substance of Professor Geraghty's testimony on four specific instances of allegedly improper testimony as to legal conclusions:

"... in this case there was an unconscious bias and Mr. Davis was terminated because of his age." Transcript (Tr.) at 245.

"... Mr. Davis appears to be discriminated against and ... that age was a factor that determined his termination." *Id.*

"I find the fact that Mr. Davis was discharged very, very singly [sic], and the only difference between him [sic] was age. Must be somehow a question of age in the discharge of Mr. Davis." Tr. at 248.

"Barring any other reason given, it would appear to me to be obvious." *Id.* (Answer in response to the question, "It is your opinion, then, that Mr. Clarence Davis was discharged in August, 1979, by the defendant, Combustion Engineering, as a result of unlawful age discrimination?" *Id.*)

work in the areas of finance and personnel. He has written personnel policies and conducted training sessions in personnel matters.

At the time of trial, Professor Geraghty was Professor of Management and Marketing at the University of Tennessee-Chattanooga. His teaching duties were largely in the areas of production and personnel.

He had not previously been involved in the area of age discrimination, and he was unfamiliar with the specifics of the ADEA. The record does not reveal his familiarity, if any, with discrimination law in general.

He testified at trial that in his opinion, based on his examination of appellant's personnel records, appellee was terminated because of his age. Pursuant to an analysis of those records, he testified that he was able to eliminate all other factors as bases for appellee's discharge.

■ Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

The decision to allow a witness to testify as an expert is largely within the discretion of the trial court and will not be disturbed on appeal unless clearly erroneous or an abuse of discretion. *Mannino v. International Manufacturing Co.*, 650 F.2d 846, 849 (6th Cir.1981); *Morvant v. Construction Aggregates Corp.*, 570 F.2d 626, 634 (6th Cir.), *cert. dismissed*, 439 U.S. 801, 99 S.Ct. 44, 58 L.Ed.2d 94 (1978); *United States v. Barker*, 553 F.2d 1013, 1024 (6th Cir.1977).

■ Rule 702 should be broadly interpreted on the basis of whether the use of expert testimony will assist the trier of fact. *Mannino, supra.* The fact that a proffered expert may be unfamiliar with pertinent statutory definitions or standards is not grounds for disqualification. Such lack of familiarity affects the witness' cred-

ibility, not his qualifications to testify. *Ellis v. K-Lan Co., Inc.*, 695 F.2d 157, 161 (6th Cir.1983).

■ Applying these standards, we hold that the trial court did not abuse its discretion in permitting Professor Geraghty to testify as an expert. We note first that the court applied the correct legal standard in reaching its decision. *Cf. Mannino, supra,* at 849; *Barker, supra,* at 1022. The Court's conclusion that Professor Geraghty's testimony would assist the jury was not clearly erroneous, given the broad standards of Rule 702.

We note further that appellant's counsel was given, and took full advantage of, the opportunity to challenge Professor Geraghty's familiarity with the ADEA and his credibility as an expert. Tr. at 263–64. In addition, the court carefully instructed the jury that they were to determine the weight and credibility to be given the expert's testimony. Tr. at 446–47. Under these circumstances, we conclude that the trial court did not err in permitting the expert testimony of Professor Geraghty.

■ We also reject appellant's challenge to the substance of Professor Geraghty's testimony. See fn. 1, *supra.* Under Federal Rule of Evidence 704, otherwise admissible opinion testimony by an expert is not objectionable on the ground that it embraces an ultimate issue of fact. *United States v. Barrett*, 703 F.2d 1076, 1084 n.14 (9th Cir.1983); *Moore v. Wesbar Corp.*, 701 F.2d 1247, 1253 (7th Cir.1983); *United States v. Kelly*, 679 F.2d 135, 136 (8th Cir.1982). *See also Barefoot v. Estelle*, 463 U.S. 880, 103 S.Ct. 3383, 3400 n. 9, 77 L.Ed.2d 1090 (1983). The first three instances of challenged testimony are simply opinions which embrace an ultimate fact, i.e., the presence of age discrimination, and are thus clearly within the ambit of the Rule.

■ The fourth challenged bit of testimony involves an opinion regarding "unlawful" age discrimination. It is therefore arguably within the exception to Rule 704 for opinions "phrased in terms of inade-

quately explored legal criteria." *See Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir.1983); Advisory Committee Note on Rule 704. Assuming, *arguendo*, that it was error to admit this one bit of testimony, we find the error to be harmless. *See* Fed.R.Civ.P. 61. As noted above, Professor Geraghty's lack of familiarity with the provisions of the ADEA was exposed on cross-examination. More significantly, the jury was instructed that they were to determine the weight to give the expert's opinion, Tr. at 446–47, and they were specifically instructed that they could "totally disregard" such opinion if they found it unsound for any reason. *Id.* at 447. Under these circumstances, no reversible error was committed.

## II.

Appellant also assigns as error the trial court's instruction on a defendant's evidentiary burden in meeting a prima facie showing of age discrimination. The trial court instructed the jury that a plaintiff was entitled to a verdict in his favor upon establishing a prima facie case of age discrimination, unless the defendant proffered "credible evidence" of legitimate, non-discriminatory reasons for its actions.[2] Appellant argues that, by speaking in terms of "credible evidence," the trial court misstated appellant's evidentiary burden.

This Court has adopted, in age discrimination cases, a modified version of the guidelines established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) for allocating the burden of proof in Title VII cases. *Laugesen v. Anaconda*, 510 F.2d 307 (6th Cir.1975). In *McDonnell Douglas*, the Supreme Court stated that, once a plaintiff has met his initial burden of establishing a

prima facie case of discrimination, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for its conduct. *McDonnell Douglas, supra*, 411 U.S., at 802, 93 S.Ct. at 1824. In *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 255, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981), the Court described the defendant's burden as one of clearly setting forth, "through the introduction of admissible evidence" the reasons for its conduct. Appellant argues that the trial court, by casting its instructions on defendant's burden in terms of "credible" evidence, imposed a standard higher than that established in *Burdine*.

■ While we believe that it is better practice to use the phrase "admissible evidence", we do not believe that the jury instructions on burden of proof, taken as a whole, require reversal.

■ In using the phrase "admissible evidence," the Supreme Court in *Burdine* was simply indicating that a defendant could not meet its burden by advancing an "articulation," such as the answer to a Complaint or the argument of counsel, which could not be admitted as evidence. *Burdine, supra*, at 255 n.9, 101 S.Ct. at 1094 n.9. As this Court has pointed out, the use of the phrase "admissible evidence" was not meant to suggest that any admissible statement of non-discriminatory intent would suffice to enable a defendant to meet its burden. *See Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc.*, 690 F.2d 88, 96 (6th Cir.1982). Relying on specific language in *Burdine*, we said that "[n]ot only must such evidence be 'clear and reasonably specific,' but it must be of such a

---

**2.** The jury was instructed, in pertinent part, as follows:

However, even in the absence of direct proof of age discrimination, such a prima facie case would be sufficient to entitle the plaintiff to a verdict upon the issue of age discrimination unless you should further find that the defendant has entered credible evidence in the record that its actions in terminating the plaintiff and/or in failing to recall

him were motivated by factors other than age or were for good cause. Tr. at 453.

The jury was also instructed that, "even in the absence of direct proof of age discrimination and even upon the entry of credible evidence by the defendant that it was motivated by reasonable factors other than age in terminating the plaintiff and/or in failing to recall him," the plaintiff could prove his case by a preponderance of the evidence. *Id.* at 454.

character as to 'justify a judgment for the defendant.' *Id."* (citations omitted). Of course, the defendant "need not persuade the [trier of fact] that it was actually motivated by the proffered reasons," *Burdine, supra,* 450 U.S., at 254, 101 S.Ct. at 1094, and the "plaintiff retains the burden of persuasion." *Id.* at 256, 101 S.Ct. at 1095. *See* also *Board of Trustees of Keene State College v. Sweeney,* 439 U.S. 24, 25 n.2, 99 S.Ct. 295–296 n.2, 58 L.Ed.2d 216 (1978). A defendant "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Burdine, supra,* 450 U.S., at 257, 101 S.Ct. at 1096.

■ We believe that the trial court's jury instructions on burden of proof, taken as a whole,[3] comport with the foregoing standards. We are convinced that the concept of credibility is inherent in evidence which is "clear and reasonably specific." *Rowe, supra,* at 96, "of such a character as to justify a judgment for the defendant," *id.,* and which would "allow the trier of fact *rationally* to conclude that the employment decision had not been motivated by discriminatory animus." *Burdine, supra,* at 257, 101 S.Ct. at 1096 (emphasis added).

We note particularly that the trial court carefully instructed that "the plaintiff would have the burden of proof … with respect to each issue," Tr. at 442, and that "at all times … the plaintiff has the burden of establishing his contentions by a preponderance of the evidence …" *Id.* at 444. The instructions contain repeated references to plaintiff's burden. *Id.* at 442–

45; 451–52; 454. Taken as a whole, the instructions do not suggest that the burden ever shifted to appellant to persuade the jury by a preponderance of the evidence that its motives were legitimate and non-discriminatory. *See Burdine, supra,* at 250, 101 S.Ct. at 1092. *See also Sones-Morgan v. Hertz Corp.,* 725 F.2d 1070 (6th Cir.1984) (reference to defendant's burden "of persuasion" in sex discrimination case was harmless error where district court correctly applied rule that ultimate burden remained with plaintiff.)

## III.

■ We turn next to appellant's contention that the trial court erred in its instructions to the jury regarding willful violations of the ADEA.[4] Here again, we hold that the instructions, considered as a whole, do not require reversal.

At the time the briefs in this case were filed, our decision in *Blackwell v. Sun Electric Corp.,* n.3 *supra,* addressing this issue, had not been rendered. Thus, neither the trial court nor the parties had benefit of the guidance therein.

In *Blackwell,* we held that

In order to show willfulness, an ADEA plaintiff must show that the employer's actions were voluntary and intentional. The employer is not necessarily shielded from liability because he is unaware of the "implications of his actions under the Act." Alternatively, the plaintiff may receive liquidated damages if he shows that the employer was reckless in not knowing that his actions were governed

---

**3.** In evaluating the adequacy of jury instructions, they must be taken as a whole. *Blackwell v. Sun Electric Corp.,* 696 F.2d 1176, 1181 (6th Cir.1983); *Haislah v. Walton,* 676 F.2d 208, 212 (6th Cir.1982); *Laugesen, supra,* at 315.

**4.** The ADEA provides that liquidated damages are available only in cases of willful violations of the Act. 29 U.S.C. § 626(b). The Act itself does not define "willful," nor does it provide guidance in fashioning such a definition.

The district court instructed the jury on this issue as follows:

You are instructed in this regard that an act is done willfully if it is done knowingly and

done intentionally and in violation of the Act. Willfulness would exist if the employer Combustion knew that it was subject to the Federal Age Discrimination in Employment Act and voluntarily proceeded in the face of that knowledge to engage in conduct which it knew might violate the Act. Willfulness need not involve a bad purpose or evil motive on the part of en [sic] employer. You are instructed in this regard that an act is done wilfully if it is done knowingly, done intentionally, and that is done, as I say, in violation of the Act. Tr. at 455–56.

by the ADEA or that the employer acted in reckless disregard of whether his actions were covered by the ADEA.

*Id.* at 1184 (footnote omitted). We stated our agreement with the Third Circuit, *see Wehr v. Burroughs Corp.,* 619 F.2d 276, 279 n.5 (3rd Cir. 1980), that a plaintiff need not show that the employer acted with a specific intent to violate the ADEA. *Blackwell, supra,* at 1184. We also stated that the trier of fact is not required to make express findings of fact on the issue of the employer's good faith. *Id.* We concluded that the instructions to the jury "should focus on whether the employer deliberately, intentionally and knowingly discharged the employee because of his age." *Id.*

Reviewing the Trial court's instructions on willfulness as a whole, we conclude that they "adequately formulated the relevant considerations for the jury." *Id.* Accordingly, we find no reversible error.

## IV.

Appellant contends that the district court erred in awarding prospective damages ("front pay") in the amount of $88,800.[5] Appellant argues that front pay is not recoverable under the ADEA.

The question of front pay has not previously been considered by this Court. Indeed, those Circuits which have considered the problem have reached differing conclusions. The First Circuit in *Loeb v. Textron,* 600 F.2d 1003 (1st Cir.1979), reserved decision on the question of front pay, pending consideration of the issue, in the first instance, by the District Court. The Court of Appeals did, however, suggest standards by which the District Court should be governed, including the suggestion that continuing payments or substantial awards

based on life expectancy would be inappropriate. *Id.* at 1023.

Subsequently, the First Circuit in *Kolb v. Goldring, Inc.,* 694 F.2d 869 (1st Cir.1982), specifically held that a plaintiff could not recover front pay where damages were "settled" on the date of judgment, even though the injury continued. *Id.* at 874 n.4. The Court noted that an award of damages should "put plaintiff in the place he would have occupied but for the discrimination." *Id.* at 872.[6]

The Third Circuit in *Wehr, supra,* declined to consider the issue in a situation where the plaintiff had disclaimed a desire for reinstatement. Such disclaimer, the Court pointed out, removed future damages from further consideration. *Id.* at 283.

The Eighth Circuit in *Gibson v. Mohawk Rubber,* 695 F.2d 1093 (8th Cir.1982), held that a District Court might consider monetary damages in lieu of reinstatement but held damages not recoverable for the period beyond which the plaintiff would have been terminated for non-discriminatory reasons.

The Ninth Circuit, in *Cancellier v. Federated Department Stores,* 672 F.2d 1312 (9th Cir.1982), stated that damages in lieu of reinstatement were available under the ADEA, although no such award had been made by the trial court. *Id.* at 1319–20.

There is a consistent theme in those decisions which have considered the problem. The award of such damages is a matter of discretion with the trial court. The Eighth Circuit in *Gibson, supra,* stated it best when observing that "the purpose of the ADEA is to make persons whole." *Id.* at 1097.

"Front pay" does not appear to lend itself to a per se rule. It is neither mandated nor prohibited by the Act. Rather, it is

---

**5.** The question of front pay was submitted to the jury as a special issue. An award of $88,800 was made. The parties to the litigation had agreed that the question of reinstatement should be reserved for decision by the Court. The District Court declined to order reinstatement and held instead that it "was leaving plaintiff to

seek his satisfaction in the prospective damage award of $88,200 [sic] as returned by the jury."

**6.** It might be noted in passing that The Honorable John W. Peck, Senior Judge of this Court, sat by designation in the First Circuit and concurred in the foregoing decision.

but one of a broad range of remedial measures available under the ADEA.

■ Section 626(b) of the Act provides, in part,

In any action brought to enforce this chapter the court shall have jurisdiction to grant *such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter,* including *without limitation* judgments compelling employemnt, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section.

29 U.S.C. § 626(b) (emphasis added). In addition, subsection (c) provides in part, "Any person aggrieved may bring a civil action in any court of competent jurisdiction for *such legal or equitable relief as will effectuate the purposes of this chapter.*" 29 U.S.C. § 626(c)(1) (emphasis added). In light of this language, we hold that front pay is a remedy available to the trial court for use, in its discretion, in fashioning relief.

We emphasize, however, that an award of front pay must be governed by the sound discretion of the trial court and may not be appropriate in all cases. For example, the award of front pay to a discriminatorily discharged 41 year old employee until such time as he qualifies for a pension might be unwarranted. On the other hand, the failure to make such an award for an employee age 63, likewise discriminatorily discharged, might be an abuse of discretion.

We join the Eighth Circuit in concluding that the purpose of the Act is to make people whole and that which makes people whole is a matter for the discretion of the trial court under the facts and circumstances of the individual case. *See, Gibson, supra,* at 1097, 1101.

In considering the award in the matter at hand based upon this analysis, the Court notes that the District Court made the following findings: "He [plaintiff] is presently 59 years of age and that he has but approximately six years until he would be faced with mandatory retirement. The Court also notes the substantial reductions in force and changed conditions at the defendant's plant due to a continued reduced demand for its products with the prospects for further reduction in force making it possible that the plaintiff would be lawfully terminated before his mandatory retirement date." (Memorandum filed March 18, 1982, Appendix, pg. 145).

■ Based upon such determinations by the trial court, this Court now holds that the approval of the prospective damage award of $88,800 as returned by the jury was not an abuse of discretion.

## V.

The rule regarding attorney fees in this Circuit was set forth in *Northcross v. Board of Education of Memphis City Schools,* 611 F.2d 624 (6th Cir.1979) *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980). *Northcross* provides the standard for calculating attorney fees in actions brought pursuant to ADEA. *See Rose v. National Cash Register Corp.,* 703 F.2d 225, 230 (6th Cir.) *cert. denied,* —— U.S. ——, 104 S.Ct. 352, 78 L.Ed.2d 317 (1983).

■ The trial court awarded $27,471.50 for attorney fees and $842.40 for expenses. Each of these sums represented one-half of the total that had been claimed. In addition, the sum of $12,500.00 was awarded for "contingency factor and quality of representation." The trial court did not have the benefit of the recent Supreme Court decision in *Blum v. Stenson,* —— U.S. ——, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). In the *Blum* case, an analysis was made of the circumstances under which an upward adjustment of reasonable fees could be made. The Supreme Court concluded:

"The district court ... may justify an upward adjustment only in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the

hourly rates charged and that the success was 'exceptional'."

*Id.*, 104 S.Ct. at 1549. There is no discussion in the district court's Memorandum of the basis for this award. There was a similar absence in *Blum* and under those circumstances, the increase in fee award was reversed. Based upon such determination, this Court is bound to take similar action and accordingly the award of such increase in fee is hereby REVERSED.

## VI.

In accordance with the foregoing, the judgment of the district court is hereby AFFIRMED as to all determinations with the exception of an enhancement of attorney fees and REVERSED in regard to such fees as only to the award of $12,500.00 for "contingency factor and quality of representation."

WELLFORD, Circuit Judge, concurring in part and dissenting in part.

While I agree with much of Judge Rubin's opinion, I write separately to state my views regarding three issues.

First, I dissent from the majority's treatment of the "front pay" issue. In deciding not to grant reinstatement to the plaintiff, the trial court noted "the substantial reductions in force and changed conditions at the defendant's plant due to a continued reduced demand for its products, with the prospects for further reductions in force making it possible that the plaintiff would be lawfully terminated before his mandatory retirement date." The court nevertheless awarded the plaintiff $88,800 in prospective damages, the amount based upon calculations by plaintiff's expert on the assumption that plaintiff would not have been laid off, but would have continued to work full time based on a normal work-life expectancy. In essence, the court denied reinstatement because of the likelihood of layoff but ignored that likelihood in making

what I consider to be a speculative front pay award. This does not, in my view, constitute the sound exercise of discretion discerned by the majority. The ADEA was not intended to insulate workers from the problems of a struggling company in a difficult and uncertain economy and the probability of layoffs or even plant closing.

Plaintiff's chief witness on damages, Geraghty, could only describe the actions of defendant as appearing to him to be "unconscious bias" and not "by any stretch of the imagination ... a policy of overall age discrimination .... [A] mistake [was] made in this case." At best, in my view, appellee should have been ordered reinstated to his former position and paid his backpay damage award of $22,200 only. Appellee prayed in his amended complaint and requested at trial that the court require the defendant to reinstate him "with full employment rights and benefits" and "award his lost wages through the date of his reemployment." [1] That is all that plaintiff should have received in the event of a favorable judgment. *See Blackwell v. Sun Elec. Corp.*, 696 F.2d 1176 (6th Cir.1983). Initially, the trial judge, in my view, reacted properly in stating that "any claim for damages would be limited to damages that have accrued to the date of tria." The trial court was well aware that plaintiff had already secured other employment and the relief so indicated would render Davis whole.

Second, I dissent from the court's conclusion that the jury was properly charged regarding what constitutes a willful violation of the Act. After analyzing the willfulness standards under the ADEA employed in other circuits, Judge Pell of the Seventh Circuit articulated an appropriate standard and sound reasons in support:

Congress, in our opinion, intended that liability under the ADEA could be established without any showing as to the

---

**1.** The whole import of the discrimination in employment laws, whether ADEA or Title VII, is that "persons aggrieved by the ... effects of the unlawful employment practice be, so far as possible, *restored* to a position where they would

have been were it not for the unlawful discrimination." *Firefighters Local Union No. 1784 v. Stotts,* —— U.S. ——, —— n. 15, 104 S.Ct. 2576, 2590 n. 15, 81 L.Ed.2d 483 n. 15 (1984) (emphasis added).

defendant's state of mind. It is equally clear that, by allowing liquidated damages only for a "wilful" violation, 29 U.S.C. § 626(b) (1976), Congress did not intend the doubling of damages to be automatic. Those courts which have found willfulness to exist on a showing of recklessness have answered the argument that their standard leads to such an automatic doubling by pointing out that this is not the case when the plaintiff relies on statistical evidence to establish his prima facie case.

One could readily conclude from this reasoning that liquidated damages will always be available to a plaintiff who establishes liability under the ADEA on a discriminatory intent rather than a discriminatory impact theory. We find nothing in 29 U.S.C. § 626(b) (1976), or in the legislative history of the ADEA, to support such a result.

In fact, the legislative history of the ADEA suggests that the Congressional framers thought that non-willful discrimination directed towards an individual was quite possible. Unlike race discrimination, age discrimination may simply arise from an *unconscious* application of stereotyped notions of ability rather than from a deliberate desire to remove older employees from the workforce:

> Age discrimination is not the same as the insidious discrimination based on race or creed prejudices and bigotry. Those discriminations result in non-employment because of feelings about a person entirely unrelated to his ability to do a job. This is hardly a problem for the older jobseeker. Discrimination arises for him because of assumptions that are made about the effects of age on performance. As a general rule, ability is ageless.

113 Cong.Rev. 34,742 (1976) (remarks of Rep. Burke).

The standard for willfulness therefore should focus on the defendant's state of mind at the time the allegedly discriminatory acts occurred. It must distinguish those situations in which an employer consciously discriminates against an employee because of age from those in which the discrimination is unconscious. This distinction is just as necessary in disparate treatment cases as it is when the plaintiff sues on a discriminatory impact theory. We think that a finding of willfulness should lie only if there is some showing as to the defendant's knowledge of the illegality of his actions. We hold that, in order to prove willfulness under 29 U.S.C. § 626(b) (1976), a plaintiff must show that the defendant's actions were knowing and voluntary and that he knew or reasonably should have known that those actions violated the ADEA.

*Syvock v. Milwaukee Boiler Mfg. Co.*, 665 F.2d 149, 154–56 (7th Cir.1981) (citations & footnotes omitted). Footnote 10 in *Syvock* reads:

> The aspect of this test for willfulness that requires a showing that the employer knew or reasonably should have known that his actions were violative of the ADEA does not put an insurmountable burden on the ADEA plaintiff. The criterion implies that the plaintiff must show two things: (1) that the employer knew or reasonably should have known what the requirements of the ADEA are; and (2) that the employer knew or reasonably should have known that his actions towards the plaintiff were inconsistent with those requirements.

We concur with the reasoning of the Ninth Circuit in *Kelly v. American Standard, Inc.*, 640 F.2d 974, 980 (9th Cir.1981), that the appropriate standard cannot create an incentive for the employer to remain ignorant of the law. 29 U.S.C. § 627 (1976) requires employers to post notices required by the Secretary of Labor, Pursuant to statutory authority, the Secretary has promulgated a regulation requiring employers to post notices in conspicuous places on premises advising employees about the application of the Act, 29 C.F.R. § 850.10 (1980). The plaintiff's burden of showing that the employer knew or reasonably should

have known what the law required should therefore be easily met.

The determination whether the employer knew or reasonably should have known that his actions toward the plaintiff were inconsistent with the law is a determination left to the jury in the first instance. *The showing must clearly be greater than that necessary for the initial finding of ADEA liability. The showing must be sufficient to indicate that the defendant's discrimination was not unconscious. In a disparate treatment case, a finding of willfulness will generally require some direct evidence of discriminatory intent toward the plaintiff or a showing that, at the time of the alleged discriminatory action, the employer was motivated to discriminate or engaged in a pattern of discriminating against older employees.*

*Id.* at 156 n.10 (emphasis added). This court, indeed, specifically approved the language from *Syvock* emphasized in the above quotation and added that "instructions to the jury should focus on whether the employer *deliberately*, intentionally and *knowingly* discharged the employee because of his age." *Blackwell v. Sun Elec. Corp.,* 696 F.2d at 1184 (emphasis added).

Judge Wilson's charge dealing with the willfulness standard here was as follows:

You are instructed in this regard that an act is done willfully if it is done knowingly and done intentionally, and in violation of the Act. Willfulness would exist if the employer Combustion knew that it was subject to the Federal Age Discrimination in Employment Act and voluntarily proceeded in the face of that knowledge to engage in conduct *which it knew might violate the Act.* Willfulness need not involve a bad purpose or evil motive on the part of en [sic] employer. You are instructed in this regard that an act is done willfully if it is done knowingly, done intentionally, and that is done, as I say, in violation of the Act.

Tr. at 455–56 (emphasis added). In a disparate treatment case such as this one, not based on statistical evidence of any plan or general practice of age discrimination, the instruction was confusing in indicating that if defendant knew it was subject to the Act and voluntarily engaged in conduct which "might violate" the law, it should be held liable.

Third, while I believe that error was committed regarding Geraghty's testimony, I concur with the majority in its handling of this issue because the error was harmless. I write separately simply to stress that Geraghty should not have been permitted to testify that certain actions of the defendant constituted "unlawful" age discrimination. As set out in the notes of the advisory committee to Fed. R. Evid. 704, opinions "which would merely tell the jury what result to reach" should be excluded. Such opinions, "phrased in terms of inadequately explored legal criteria," are inadmissible. The question asked this witness was like the example condemned in the notes: "Did T have capacity to make a will?" Professor Geraghty was asked whether appellant's actions were "lawful." Fed. R. Evid. 704, while dispensing with the rule against opinions on "ultimate issues," is *not* "intended to allow a witness to give *legal* conclusions. *United States v. Fogg*, 652 F.2d 551, 557 (5th Cir.1981), *cert. denied*, 456 U.S. 905, [102 S.Ct. 1751, 72 L.Ed.2d 162] (1982)." *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir.1983). "[C]ourts must remain vigilant against the admission of legal conclusions." *United States v. Milton*, 555 F.2d 1198, 1203 (5th Cir.1977); *see also Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 508–512 (2d Cir.), *cert. denied*, 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 (1977).

In sum, I would be prepared to concur in a judgment of reinstatement and a limited damage award despite what I consider to be a confusing instruction and improper expert testimony. I agree with the handling of the attorney fee issue. I dissent, however, as to the damage award here approved under the circumstances of this case.