863 F.2d 47
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Federico EREBIA, Plaintiff-Appellant, Cross-Appellee,
v.
CHRYSLER PLASTIC PRODUCTS CORPORATION, Defendant-Appellee,
Cross-Appellant.
 Nos. 87-3297, 87-3298.
 United States Court of Appeals, Sixth Circuit.
 Nov. 25, 1988.
 
 Before WELLFORD and ALAN E. NORRIS, Circuit Judges, and JULIAN A. COOK*, Jr., District Judge.
 PER CURIAM.
 
 
 1
 This is the second time this dispute has come before this court for resolution. Erebia, the plaintiff, was successful on a prior occasion in persuading a panel of the court to affirm a jury verdict totalling $40,000 in a hostile work environment claim against Chrysler Plastic Products Corporation ("CPPC") under 42 U.S.C. Sec. 1981. See 772 F.2d 1250 (6th Cir.1985). In 1984, following the resolution of that action, Erebia was discharged as an inspection supervisor. This subsequent employment action is the basis for the present action based upon a claim of retaliation brought under both Sec. 1981 and Title VII.
 
 
 2
 In July 1984, CPPC's labor relations department received separate complaints about Erebia from three females, Betty Simmons, Susan Kerr, and Brenda Parker. Each complained that Erebia "had made unwanted sexual advances toward them, had requested sexual favors from them, and harassed them repeatedly to borrow money from them." The district court concluded that Erebia was guilty of the conduct complained of, and had created an intimidating and hostile work environment for these women subordinate to him.
 
 
 3
 Erebia, in fact, had been guilty of a similar kind of misconduct in the past. He was disciplined for bothering a female employee prior to these incidents, and also had an affair with a coworker which interfered with his work to such an extent that he had to be warned by his CPPC superiors to stop. These problems occurred years prior to the harassment complaints, however, and Erebia had been rated a good employee in an evaluation given just prior to the charges bringing about his termination.
 
 
 4
 CPPC's handling of the complaints of the female employees raised questions about its true motives in terminating Erebia. It informed Erebia that the women had complained, but refused to give him copies of their statements. It told him that he had to respond in writing to the charges but did not tell him precisely when to respond, or exactly what the complaints were. CPPC terminated Erebia shortly after the complaints became formal requests for employer action, and it cited his previous record, the additional sexual harassment charges, and his failure to respond to them as bases for its action.
 
 
 5
 The district court recognized that Erebia's harassment of his female subordinates was certainly sufficient justification to fire him. But it also found the decision to fire Erebia was made so soon after the formal charges were filed that even if Erebia had known when and what charges he had to answer, there would have been inadequate time for CPPC to consider Erebia's explanation. The court apparently felt some less drastic action might have been taken but for CPPC's desire to retaliate, or that Erebia ordinarily would have at least been given a fairer notice and a more reasonable chance to respond before termination. The district court found in plaintiff's favor despite the fact it was convinced Erebia had himself been guilty of misconduct.
 
 
 6
 The jury apparently agreed with the district court's rationale in deciding the Sec. 1981 claim, because it decided retaliatory discharge had occurred and awarded Erebia $75,000 in compensatory damages and $55,000 in punitive damages. The court itself did not award backpay, feeling that remedy had already been adequately provided by the jury's compensatory award. It also refused to reinstate Erebia, for three reasons. First, it noted that Erebia had only asked for front pay in his complaint, and had waited until just prior to closing arguments to demand reinstatement. CPPC accordingly did not argue against reinstatement in its defense, as it would have in the ordinary case, and thus had been prejudiced by the delay. A second reason given for the decision denying reinstatement was that the court believed Erebia could no longer work effectively at CPPC because of the hostility engendered during the course of the litigation. This second basis was closely related to the court's third justification that Erebia had shown he would not be able to be an effective worker because he had repeatedly harassed female subordinates. The court's remedy was to award Erebia one dollar in front pay, attorney fees, and costs. The court then refused to grant CPPC's motion to set aside the jury verdict or to reconsider its award, and this appeal by both parties followed.
 
 I. EREBIA'S APPEAL
 
 7
 The issue raised by Erebia's appeal is whether a court has discretion to find evidence of intentional discrimination, yet award neither reinstatement nor front pay. As stated, the court denied reinstatement, and awarded nominal front pay of only one dollar.
 
 
 8
 Reinstatement is a presumed remedy following from a finding of intentional discrimination, as part of Title VII's "make whole" remedy. It should not be denied except for reasons unique to an individual case which will not undermine the remedial purposes of the statute. Franks v. Bowman Transportation Co., 424 U.S. 747, 779 (1976); Albemarle Paper Co. v. Moody, 422 U.S. 405, 421 (1975). Erebia argues that the purposes of the statute were frustrated in this case by denial of reinstatement and front end pay. CPPC argues that the district court's remedy was predicated on the peculiar situation presented in this case.
 
 
 9
 We have approved a district court's refusal to reinstate in a case of this sort when the chances for a satisfactory employment relationship are dim. Shore v. Federal Express Corp., 777 F.2d 1155, 1159 (6th Cir.1985). Such a state of affairs seems present in this case because of Erebia's conduct toward his subordinates. The district court made a factual finding that three women had been pressed for sexual favors and money by their supervisor. This is, of course, a serious problem for a satisfactory working environment, and one which might expose CPPC to further discrimination liability were Erebia to be retained. The relevant consideration under the circumstances is whether the district court properly decided Erebia would not be an effective employee at CPPC, and whether his reinstatement might generate further liability of CPPC to other employees. Based on the record before us, we cannot say the court abused its wide discretion in fashioning a particular remedy in this case. Henry v. Lennox Industries, Inc., 768 F.2d 746, 753 (6th Cir.1985).[1] We find this additional circumstance of sexual harassment by Erebia to distinguish this case from In re Lewis, 845 F.2d 624, 630 (6th Cir.1988).
 
 
 10
 The normal practice is to award front pay in those situations where reinstatement is not appropriate. Shore, 777 F.2d at 1159; Henry, 768 F.2d at 753. We have said an award of front pay is not, however, mandatory: "an award of front pay is sometimes appropriate in order to effectuate fully the 'make whole' purposes of Title VII." Shore, 777 F.2d at 1159 (emphasis added). The ADEA case relied on in Shore makes it even clearer that front pay is not demanded in every case. " 'Front pay' does not appear to lend itself to a per se rule. It is neither mandated nor prohibited by the Act. Rather, it is but one of a broad range of remedial measures available under the ADEA." Davis v. Combustion Engineering, Inc., 742 F.2d 916, 922-23 (6th Cir.1984).
 
 
 11
 We are also reluctant to conclude that the district judge acted improperly in this case because Title VII remedies are by their very nature equitable. A party requesting relief is thus subject to equitable doctrines limiting relief. For example, in St. John v. Employment Development Corp., 642 F.2d 273 (9th Cir.1981), the plaintiff brought a retaliation claim when she was discharged following her discrimination action. The district court found retaliation but refused reinstatement because, unknown to her employer at the time, she had leaked confidential information to the EEOC. The Ninth Circuit affirmed this action by the district court because principles of equity such as the doctrine of "clean hands," should appropriately be considered in deciding what remedies fit the situation, while recognizing the general "make whole" principle. Where a plaintiff had engaged in misconduct, the district court was within its discretion to limit her remedy to reflect her wrongdoing. Id. at 275. We accordingly affirm the district court's action here as to front end pay because the remedy reflects both the misconduct of employer and employee in this case. On the question of reinstatement, however, we remand the case for consideration as to whether there is another equivalent position for Erebia available at CPPC for prompt reinstatement which would not involve the same potentiality of sexual harassment.
 
 II. CPPC'S APPEAL
 
 12
 CPPC claims the court misapplied the standard of proof in finding liability at all under Title VII. Specifically, CPPC points to the fact that the judge referred to this case as a "mixed motive" question, citing Blalock v. Metal Trades, Inc., 775 F.2d 703 (6th Cir.1985), a case in which direct evidence of discrimination was produced. CPPC claims that the case at issue did not present mixed motives, and that the district court improperly directed it to prove the alleged discriminatory motive was not the one resulting in the dismissal.
 
 
 13
 While the issue is a close one, we cannot conclude that the district court misapplied the burden of proof under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The district court found that Erebia had made out a prima facie case of discrimination; that CPPC had articulated a justifiable reason for dismissal, but that Erebia had proven this reason to be pretext. The trial judge stated "Chrysler failed to establish Erebia would have been discharged even in the absence of the impermissible motivation." Taken in the context of all of the court's other statements, this comment does little more than relate the court's feeling that CPPC's professed motivations were not persuasive. It did not reflect an erroneous placing of the burden of proof on defendant CPPC.
 
 
 14
 The evidence here is not overwhelming that CPPC retaliated against Erebia, but an even bigger question is whether he proved the requisite motivation to justify punitive damages. The elements of retaliatory discharge are set out in Jackson v. RKO Bottlers of Toledo, Inc., 743 F.2d 370, 375 (6th Cir.1984): a plaintiff must show that he previously asserted violations of Title VII rights; that he was discharged, and that a causal connection exists between the two events. Punitive damages are appropriate only where the defendant acted with intent to deprive the defendant of these rights, or with callous indifference towards them. In determining sufficiency of the evidence in such a case, the verdict must be upheld if "substantial evidence" supports it. Wilkins v. Eaton Corp., 790 F.2d 515 (6th Cir.1986); Erebia v. Chrysler Plastic Products Corp., 772 F.2d 1250 (6th Cir.1985), cert. denied, 475 U.S. 1015 (1986). Substantial evidence is that amount of proof a reasonable man would accept to support a proposition. Richardson v. Perales, 402 U.S. 389 (1971).
 
 
 15
 The evidence related above suggests that the jury was faced with two alternatives. It could agree with CPPC that it fired Erebia because of his past work record and his harassment of fellow employees, or it could agree that Erebia was really fired because CPPC was upset that he won a discrimination suit against it less than a year earlier. Acceptance of Erebia's version of what happened does not make out an automatic punitive damages case. If the jury accepted Erebia's version of what happened, we agree it was proper to award damages to compensate him for all injuries resulting from the action.[2]
 
 
 16
 Plaintiff argues that the fact that CPPC intentionally retaliated against him and that there had been a prior award in his favor affirmed against CPPC for punitive damages was a sufficient basis for the punitive damages for retaliation in this case. We doubt that these factors alone form an adequate basis for a punitive award, and we would be reluctant to uphold a punitive award were there no more than this evidence in the case.
 
 
 17
 Judge Walinski instructed the jury, however, that it could award punitive damages only if the action of the defendant was "maliciously, wantonly, or oppressively done." J/A 573. This was a proper punitive damages instruction, and it correctly directed the jury to examine the critical question of CPPC's state of mind. Although we find it to be a close question, we are not prepared to find that the district court erred in not setting aside the punitive damages award. He was able to view the witnesses and to evaluate their credibility. He submitted a correct punitive damage charge to the jury and felt that it should not be set aside despite fault on the part of Erebia in his dealing with female subordinates. The decision of the trier of fact as to deliberate intent and as to credibility in cases based upon allegations of discrimination are not to be set aside unless clearly erroneous, or unless "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985) (quoting United States v. United States Gypsum, 333 U.S. 364, 395 (1948)). See also Few v. Yellow Freight, No. 86-5484 (6th Cir. April 25, 1988). We decline to set aside the punitive damage award.
 
 
 18
 In conclusion, we note that we have taken into account the totality of the award made to Erebia in this case, as did the district court. We recognize that equitable considerations were involved in the Title VII aspect of this case, including an award of substantial attorney's fees and costs to Erebia in addition to his considerable jury award of damages for his discharge. The district court was aware that Erebia had been subsequently employed at another plastic manufacturer at substantial pay after his termination by CPPC in respect to his claim for added front end pay. In light of all this, we approve of the district court's treatment of this difficult case.
 
 
 19
 In sum, we AFFIRM the action of the district court in respect to both the Sec. 1981 and the Title VII claims in this case, except that as to the possible remedy of reinstatement, we REMAND the case for further consideration of the ramifications of reinstatement only.
 
 
 20
 JULIAN A. COOK, Jr., District Judge, concurring in part, and dissenting in part.
 
 
 21
 I write to express my respectful disagreement with the majority opinion regarding the relief that Federico Erebia should receive in connection with his Title VII claim. However, with regard to the remaining issues, I join with my colleagues.
 
 
 22
 The majority in this case have affirmed a decision by the trial court which essentially held that Erebia was not entitled to reinstatement or back pay even though he had been impermissibly subjected to retaliation by Chrysler Plastic Products Corporation (CPPC) in violation of Title VII. I do not believe that the record in this cause permits such a complete denial of equitable relief to a prevailing party.
 
 
 23
 My colleagues correctly point out that the denial of reinstatement and an award of only nominal front pay by the trial court are subject to review under an abuse of discretion standard. Henry v. Lennox Industries, Inc., 768 F.2d 746, 753 (6th Cir.1985) (reinstatement); Shore v. Federal Express Corp., 777 F.2d 1155, 1159 (6th Cir.1985) (front pay not subject to a per se rule). However, I submit that the prevailing decision in this cause inaccurately describes the legal standard upon which reinstatement may be declined.
 
 The Per Curiam holds that:
 
 24
 The district court made a factual finding that three women had been pressed for sexual favors and money by their supervisor. This is, of course, a serious problem for a satisfactory working environment, and one which might expose CPPC to further discrimination liability were Erebia to be retained. The relevant consideration under the circumstances is whether the district court properly decided Erebia would not be an effective employee at CPPC.
 
 
 25
 Opinion at 5.
 
 
 26
 Yet, this description of the "relevant consideration" is at odds with our earlier ruling in In re Lewis, 845 F.2d 624, 630 (6th Cir.1988). In that case, Judge Damon J. Keith, writing on behalf of the majority, said:
 
 
 27
 Federal courts have greatly limited the grounds on which reinstatement may be denied. It is not sufficient that reinstatement might have "disturbing consequences," Sterzing v. Fort Bend Independent School District, 496 F.2d 92, 93 (5th Cir.1974), that it might revive old antagonisms or that it could "breed difficult working conditions," Allen, 685 F.2d at 1305. "Relief is not restricted to that which will be pleasing and free of irritation." Allen, 685 F.2d at 1305 (quoting Sterzing, 496 F.2d at 93).
 
 
 28
 Thus, it is my belief that the majority should not have relied upon the trial court's determination that Erebia "would not be effective at CPPC." The existence of difficult working conditions, antagonism, or disturbing consequences does not constitute sufficient exceptional circumstances, according to Lewis.
 
 
 29
 The majority also suggests that Erebia waived any opportunity for reinstatement by failing to request it in his Complaint even though the statute and case law does not obligate him to do so. Erebia correctly notes that the Court of Appeals for the Tenth Circuit in Whatley v. Skags Companies, 707 F.2d 1129, 1137 (10th Cir.), cert. denied, 464 U.S. 938 (1983), determined that "such equitable relief may be provided, even if it was not sought in the pleadings." See also Sias v. Demonstrating Agency, 588 F.2d 692 (9th Cir.1978); Fed.R.Civ.P. 54(c) ("... every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleading").
 
 
 30
 CPPC relies upon Robinson v. Lorillard Corp., 444 F.2d 791, 803 (4th Cir.19781), cert. dismissed, 404 U.S. 1006 (1972), in which the Court held that a failure to plead could bar reinstatement of a claimant if it "substantially prejudiced" the other side. CPPC claims to have been substantially prejudiced because it lost an opportunity to prove that reinstatement was not feasible. The trial court agreed.
 
 
 31
 In a post trial proceeding, Erebia filed a Motion to Reinstate, to which CPPC responded:
 
 
 32
 Unless an additional hearing for an evidentiary presentation on Title VII relief is convened [CPPC] will be prejudiced if [Erebia] is allowed to, in effect, amend his complaint at this late hour.
 
 
 33
 Tr. 70.
 
 
 34
 The only prejudice, if any, to CPPC was caused by the refusal of the trial court to hold an evidentiary hearing--not by any pleading deficiencies within the Complaint. In my judgment, this refusal constituted an abuse of discretion by the trial court. The majority's reliance upon Albemarle Paper Co. v. Moody, 424 U.S. 405 (1975) in footnote 1 is inapposite to the instant cause, in that Erebia did not create or cause the prejudice in this case.[1] Thus, I believe that the decision of the trial court regarding reinstatement should be vacated and remanded for a hearing to determine whether placement of Erebia at another location within the company facility is an available option.
 
 
 35
 I also have difficulty with the handling of the front pay issue by the trial court. The majority acknowledges that "[t]he normal practice is to award front pay in those situations where reinstatement is not appropriate." Opinion at 5. However, the trial court never explained its reasons for rejecting the front pay issue. In a conclusory fashion, the trial judge said that "Erebia is therefore awarded nominal compensatory damages including front pay, in the amount of one dollar ($1.00)." Tr. 22. Without some meaningful explanation, I do not believe that we can properly evaluate this conclusion by the trial court.
 
 
 36
 Accordingly, I must dissent on these points.
 
 
 
 *
 THE HONORABLE JULIAN A. COOK, JR., United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 An additional basis for this result asserted that Eredia waived his right to request reinstatement. The court found that CPPC did not present any evidence to overcome the presumption of reinstatement because Erebia asked only for front pay until the very end of trial. Denial of remedies due to procedural problems brought about by a claimant does not violate the purposes of Title VII, as recognized in Albemarle: "To deny backpay because a particular cause has been prosecuted in an eccentric fashion, prejudicial to the other party, does not offend the broad purposes of Title VII." 422 U.S. at 424 (emphasis in original). We find that rationale applicable to a reinstatement and front pay award as well, but we do not base our decision on this principle
 
 
 [2]
 Clearly, the jury's award reflects compensation for past and future harm to Erebia. Plaintiff's attorney during closing argument to the jury asserted:
 It is your duty to award that fair compensation based on the total past, present, and future of every injury...." (Emphasis added)
 J/A 567. Erebia was asking the jury to take into account future aspects of Erebia's injury for retaliatory discharge. The district court likewise stated in his instructions on damages to the jury:
 You may consider the damages that have occurred from the time of the discharge, on August 20, 1984 on.
 J/A 572.
 
 
 [1]
 The Court in Albemarle also held that, "The respondents here were not merely tardy, but also inconsistent, in demanding backpay." 422 U.S. at 424. Here, Erebia was, at most, tardy in his application to the Court for reinstatement